**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

H. BARTON WEIL,                               *

     Plaintiff,                               *

     v.                               *           Civil Action No. RDB-20-701

SUNRISE SENIOR LIVING
MANAGEMENT, INC.,                               *

     Defendant.                               *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

Plaintiff H. Barton Weil ("Plaintiff" or "Weil") alleges that his former employer, Defendant Sunrise Senior Living Management, Inc. ("Defendant" or "Sunrise"), terminated his employment because of his age. Plaintiff's Complaint (ECF No. 2) asserts one count of age discrimination under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-101 *et seq*. Weil originally filed suit against Sunrise in the Circuit Court for Anne Arundel County, Maryland. Sunrise removed this case to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

Pending now is Defendant's Motion for Summary Judgment (ECF No. 26). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED. Accordingly, Judgment shall be ENTERED in favor of the Defendant.

## BACKGROUND

Defendant Sunrise Senior Living Management, Inc. is a Virginia corporation with its principal place of business in McLean Virginia. (ECF No. 1 at 2.) Sunrise operates several senior living communities including one located in Annapolis, Maryland. Plaintiff H. Barton Weil is a resident of Westminster, Maryland who was born on August 18, 1956. (Equal Employment Opportunity Commission Intake Form, ECF No. 2 at 7.) On March 23, 2012, he was hired as a Dining Services Coordinator at Sunrise Annapolis. He started in that role on April 2, 2012. (ECF No. 33-1 at 6.)

As a Dining Services Coordinator ("DSC"), Weil's main responsibilities included: "food/dining preparation and service per the Sunrise designated menu program"; "ensuring safe food handling to prevent food borne illness"; and "ensuring sanitation of food service areas." (Dining Services Coordinator Job Description, ECF No. 26.) With respect to "Food Safety, Sanitation and Maintenance," Weil's responsibilities included maintaining safe food handling to prevent an outbreak of food borne illness, ensuring compliance with local health department regulations and Sunrise standards, and contacting the maintenance coordinator and executive director for repairs and scheduled maintenance of equipment. (*Id.* at 2.) As a DSC, Weil was also tasked with leadership responsibilities including leading through vision and value, managing conflict, and building strategic working relationships based on trust. (*Id.* at 1.)

Sunrise's Team Member Handbook prohibits discrimination and harassment and encourages employees to report complaints about such conduct. (Sunrise Team Member Handbook, ECF No. 26-9 at 8.) Sunrise policies also prohibit employees from creating a

hostile work environment through "repeated actions, comments or objects that 'unreasonably interfere' with work performance." (*Id.* at 10.) Sunrise also maintains an anti-harassment policy that states that "Sunrise does not tolerate verbal, physical, sexual, or emotional harassment or conduct that creates an intimidating, offensive, abusive or hostile work environment." (Sunrise Harassment Policy, ECF No. 26-10.) The policy encourages any employee who believes that "a supervisor, manager, other team member, or non-employee's actions or words constitute unwelcome harassment" to report or complain about the situation as soon as possible. (*Id.*) The policy also states that all complaints of harassment will be investigated "promptly and in as impartial and confidential a manner as possible." (*Id.*) On March 26, 2012, Weil signed an acknowledgment that he received and reviewed the Sunrise Team Member Handbook. (Team Member Acknowledgment, ECF No. 26-11.)

From October 2010 to December 2017, Jo Foster was the Executive Director at Sunrise Annapolis. As the Executive Director, Foster occupied the highest-ranking management position at the community. (Decl. of Jo Foster, ECF No. 26-12.) She supervised Weil from his hire in 2012 through 2017. On January 6, 2016, two Sunrise employees contacted Sunrise's Ethics and Compliance Hotline to report Weil's behavior. (*Id.*; Hotline Complaints, ECF No. 26-13.) One female employee complained about comments Weil made about the amount the amount of food she had ordered for lunch. (*Id.*) That same employee reported that Weil made fun of the way two Hispanic employees spoke English among themselves. (*Id.*) Another employee reported the same comments Weil had made to the first employee about her lunch as well as additional comments related to

punctuality the employee perceived to be rude. (*Id.*) Foster verbally counseled Weil that he needed to be careful about how he spoke to employees. (ECF No. 26-12.)

In another incident, a female Concierge complained that Weil spoke to her inappropriately at an outdoor event. (ECF No. 26-12) The Concierge reported that Weil stated something to her that made her upset. She left a note about the incident with Sunrise's management, but then refused to discuss it with Foster. Instead, the Concierge abruptly quit her job. (*Id.*) Foster stated that she believed the Concierge quit because of Weil. (*Id.*) Another female employee, Kathy Sterritt, the Director of Sales at Sunrise Annapolis, complained to Foster on several occasions that Weil spoke sarcastically to her. (*Id.*) Deborah Carter, the Business Officer Coordinator at Sunrise Annapolis, also reported that Weil spoke to her and others with a sarcastic tone. (Decl. of Deborah Carter, ECF No. 26-14.) Foster spoke with Weil on several occasions and indicated that he needed to be careful about what he said and how he spoke to other employees. (ECF No. 26-12.)

Sunrise's regional management teams perform annual audits of all Sunrise communities' dining services departments to assess, among other areas, sanitation compliance. (Decl. of Jaskolski, ECF No. 26-7.) When a Sunrise community performs poorly in a dining audit, regional management may perform a follow-up audit. (*Id.*) Sunrise also contracts with Crandall Corporate Dieticians, Inc. ("Crandall") to perform quarterly dining services audits at Sunrise's communities. (*Id.*) On January 27, 2017, Sunrise's Regional Director of Dining Ray Jaskolski performed an audit of the dining services department at Sunrise Annapolis. (Sunrise Audit, ECF No. 27-1 *SEALED*; ECF No. 26-7.) Jaskolski found that Weil's kitchen was non-compliant in the category of Sanitation. (*Id.*) In his audit

report, Jaskolski noted that the kitchen needed a deep cleaning and that the oven was extremely dirty. (ECF No. 27-1 *SEALED*.) He also noted that Weil failed to use the required daily and weekly cleaning logs to document kitchen cleaning. (*Id.*; Sunrise Daily and Weekly Cleaning Logs, ECF No. 26-16.) Jaskolski admonished Weil to focus on the cleaning logs and instructed him to get his team members to do a better job of cleaning the kitchen. (Pl. Dep. at 123, ECF No. 26-8.)

On February 27, 2017, a member of Sunrise's regional team conducted a follow-up audit because of the poor results the prior month. (ECF No. 26-7; ECF No. 27-2 *SEALED*.) Weil's department again failed in the Sanitation category. (ECF No. 27-2 *SEALED*.) The regional team reiterated that the dining staff needed to "focus on daily/weekly/monthly cleaning logs." (*Id.*) On June 9, 2017, Crandall conducted an audit of Sunrise Annapolis's dining services. (ECF No. 27-3 *SEALED*.) The department scored 70% in Sanitation. (*Id.*) A satisfactory score is at least an 85-87% in each area. (ECF No. 26-7.) On September 26, 2017, Crandall conducted another audit. Weil's department again performed poorly in Sanitation. (ECF No. 27-4 *SEALED*.) On December 1, 2017, Crandall conducted another audit in which Weil's kitchen received a score of 76% in Sanitation. This audit found four hazardous concerns and four repeated problems in sanitation. (*Id.*) On January 30, 2018, Jaskolski performed a subsequent annual audit of Weil's department. (ECF No. 27-6 *SEALED*.) Jaskolski again noted that Weil's kitchen was non-compliant with Sunrise's sanitation standards. (*Id.*) Weil recalls telling Jaskolski that his team would do their best to ensure a clean kitchen. (Pl. Dep. at 144-46, ECF No. 26-8.) Two weeks later, on February 13, 2018 Sunrise's regional dining team conducted a follow-up

audit of the Annapolis dining department which revealed that Weil's kitchen was still not in compliance with Sunrise sanitation standards. (ECF No. 27-7 *SEALED*.)

In December 2017, Melissa Benik succeeded Foster as the Executive Director of Sunrise Annapolis. During March 2018, Sunrise Lead Care Manager Ashley McRae approached Business Office Coordinator Deborah Carter to complain about Weil's behavior. (ECF No. 26-14; McRae Dep. at 19-20, ECF No. 26-26 .) Carter suggested that McRae speak to Benik about her concerns. (ECF No. 26-14; ECF No. 26-26.) On March 8, 2018, McRae approached Benik in her office and explained that Weil was making her anxious. McRae provided Benik of examples of Weil's behavior she found to be intimidating and harassing, including an incident during which Weil came close to McRae in the kitchen and slammed a knife down, startling her. (Benik Notes, ECF No. 26-27; McRae Statement; ECF No. 26-28.) McRae also explained to Benik that on another occasion, Weil came up behind her in the kitchen and said that he was going to cut a portion of her hair that was not yet covered. (ECF No. 26-28; McRae Dep. at 31-32, ECF No. 26-26.) McRae also detailed other incidents where Weil's behavior made her uncomfortable. McRae submitted a statement describing these incidents. (ECF No. 26-28.)  McRae related that she felt bullied, intimidated, and harassed by Weil throughout the time she worked with him. (McRae Dep. at 56-57, ECF No. 26-26.)

Benik was concerned by McRae's complaints and decided to conduct an internal investigation in accordance with her training. (Benik Dep. at 11-12, 15-16, ECF No. 26-25.) In the course of the investigation, Benik spoke with cook Robert Fraley, Dining Room Manager Yolanda Brownlee, Dishwasher Charles Thompson, cook Regina Anderson, and

dining employee Cornell Johnson. Fraley, an African-American, related that Weil would refer to him as "the help." (Fraley Statement, ECF No. 26-31.) Fraley also stated that he perceived that Weil had made a series of racially charged remarks to African-American employees. (*Id.*) Brownlee reported that Weil was disrespectful to his team members and that he treated women differently from men. (ECF No. 26-27.) Thompson also told Benik that Weil treated women worse than men. (ECF No. 26-27; ECF No. 26-33.). On March 12, 2018, Benik communicated to her manager Lisa Oursler, Regional Director of Operations, as well as Victoria Nicolaisen, Regional Human Resources Manager, that she was investigating allegations that Weil had mistreated employees. (ECF No. 26-34.) That same day, Benik interviewed Regina Anderson. Anderson told Benik that Weil discriminated against the female staff and made her feel uneasy. (Anderson Dep. at 36-37, ECF No. 26-35.) Anderson related that Weil would get angry and slam pots and pans in the kitchen. (Anderson Dep. at 23, ECF No. 26-35.) On March 16, 2018, Benik interviewed Cornell Johnson. Johnson indicated to Benik that Weil would raise his voice at a former Hispanic female employee to the point that she would cry in the bathroom. (Johnson Statement, ECF No. 26-37.) Johnson also explained that he heard Weil mock the Hispanic employee's accent and tell other employees that the woman needed to "go back" to where she "came from." (*Id.*)

On March 15, Benik interviewed Weil. Weil denied that he had called anyone "the help" but admitted that his "mouth has gotten [him] into trouble in the past." (ECF No. 26-38.) Benik requested that Weil provide a written statement to respond to the allegations. At the end of the interview, Benik informed Weil that he was being placed on administrative leave while the investigation was ongoing. On March 16, 2018, Weil submitted a written

statement denying that he treated men and women differently and that he made disparaging remarks to employees. (ECF No. 26-39.)

On March 16, 2018, the first day of Weil's administrative leave, Crandall conducted a pre-planned audit of Sunrise Annapolis' dining services. (ECF No. 27-8 *SEALED*; Pl. Dep. at 56, ECF No. 26-8.) Crandall scored Weil's department 59% in the Sanitation category. (ECF No. 27-8 *SEALED*.) Eight items in the Sanitation category were found to be hazardous, and six items were noted as repeat problems that had been previously identified. (*Id.*) On the following morning, a grease fire erupted in the kitchen stovetop. (ECF No. 26-41.) A substitute kitchen manager from another Sunrise facility investigated the cause of the fire and discovered that the stove piping was so clogged that the gas was not flowing properly. He estimated that the piping had not been cleaned in at least one year. (ECF No. 26-41.)

Benik, Oursler, and Nicolaisen discussed what action should be taken regarding Weil. (Oursler, Nicolaisen, Benik Decls, ECF Nos. 26-4, 26-5, 26-6.) They discussed the complaints the investigation revealed abut Weil's mistreatment of employees. (*Id.*) They determined that Weil was not credible in his denials of mistreating employees. (*Id.*) They also discussed Weil's failure to manage the sanitation, safety, and maintenance of the kitchen. (*Id.*) Based on these factors, Benik, Oursler, and Nicolaisen made the decision to terminate Weil's employment. (*Id.*) On March 20, 2018, Benik informed Weil that his employment was being terminated. (Benik Email, ECF No. 33-7.)

On August 2, 2018, Weil filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 2 at 6-7.) With no action

8

having been taken by the EEOC, over one and a half years later, on February 20, 2020, Weil filed suit against Sunrise in the Circuit Court for Anne Arundel County. On March 16, 2020, Sunrise timely removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441. (ECF No. 1.) On June 30, 2021, Sunrise moved for summary judgment under Federal Rule of Civil Procedure 56. (ECF No 26.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences "in the light most favorable to the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh

evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d

243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir.

2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015)

(explaining that a trial court may not make credibility determinations at the summary

judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes,

including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650 (2014).

## DISCUSSION

Maryland employers are prohibited from engaging in age discrimination by the federal

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and Title 20 of the

Maryland State Government Article ("Title 20"), Md. Code Ann., State Gov't § 20-606(a).

Section 20-606(a) is part of a statute commonly referred to as the Maryland Fair

Employment Practices Act ("MFEPA"), State Gov't §§ 20-101 *et seq.* Both statutes prohibit

an employer from discharging an individual "because of . . . age." 29 U.S.C. § 623(a)(1); Md.

Code Ann., State Gov't § 20-606(a)(1)(i). Both the United States Court of Appeals for the

Fourth Circuit and Maryland appellate courts have looked to federal law for guidance

construing Maryland employment discrimination laws.  *See, e.g., Hartman v. Univ. of Maryland

at Baltimore*, 595 F. App'x 179, 181 (4th Cir. 2014); *Price v. Giant Food, Inc.*, No. 1623, 2019

Md. App. LEXIS 602, at *11-12 (Md. Ct. Spec. App. July 23, 2019).

To avert summary judgment, a plaintiff may use either of two methods of proof: (i)

direct or indirect evidence that discrimination motivated the adverse decision, or (ii)

evidence that the defendant's articulated reason for the decision at issue was merely a

"pretext" for discrimination. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-86 (4th

Cir. 2004) (*en banc*), *abrogated on other grounds by Univ. of Texas SW Med. Ctr. v. Nassar*, 570 U.S.

338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013); *see also Avant v. S. Md. Hosp., Inc.*, No. GJH-

13-02989, 2015 U.S. Dist. LEXIS 11630, at *11 (D. Md. Feb. 2, 2015) (noting that "[t]he

Fourth Circuit recognizes two avenues of proof by which an employee can prove an ADEA

violation: (1) under ordinary principles of proof using any direct or indirect evidence relevant

to and sufficiently probative of the issue, or (2) under a judicially created proof scheme

originally used in the Title VII context in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973), and subsequently adapted for use in ADEA cases" and applying that analysis to an

MFEPA age discrimination claim.)

    Under either approach, "the ultimate question in every employment discrimination

case involving a claim of disparate treatment is whether the plaintiff was the victim of

intentional discrimination." *Id.* at 286 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S.

133, 153 (2000)). To demonstrate such an intent under the ADEA and MFEPA in a

termination case, the plaintiff must prove that, but for his age, his employment would not

have been terminated. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 2350, 174

L. Ed. 2d 119 (2009); *see also Arthur v. Pet Dairy*, 593 Fed. App'x 211, 216 (4th Cir. 2015) (*per

curiam*) (noting the "elevated" burden of proof under the ADEA).

    The second method of proof involves a three-step burden-shifting approach that was

initially laid out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). In the absence

of direct evidence of age discrimination, Maryland Courts have traditionally held that in

employment discrimination actions, parties must engage in burden-shifting paradigm

described by the United States Supreme Court in *McDonnell Douglas. See Dobkin v. Univ. of*

*Balt. Sch. of Law*, 63 A.3d 692, 699-700 (Md. Ct. Spec. App. 2013) (citing cases). First, the plaintiff must make out a prima facie case of age discrimination by demonstrating that: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger person. *Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 181 (4th Cir. 2014) (interpreting the MFEPA in the context of a claim of age discrimination resulting in termination from employment); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

If the plaintiff carries this burden, "he creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas*, 411 U.S. at 802-03). If the defendant articulates such a reason, "the presumption disappears and the plaintiff must show that the articulated reason is a pretext for age discrimination." *Id.* (citations omitted); *see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)) (noting that the "the presumption created by the *prima facie* case 'drops out of the picture,'" when a defendant articulates a nondiscriminatory reason). A plaintiff may establish that the employer's articulated reason is mere pretext "either by showing that the [employer's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently

probative of . . . [the] discrimination." *Mereish v Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). *See also Avant v. S. Md. Hosp., Inc.*, No. GJH-13-02989, 2015 U.S. Dist. LEXIS 11630, at *25 (D. Md. Feb. 2, 2015) (applying the burden-shifting framework to an MFEPA age discrimination claim).

In this case, Plaintiff does not contend that he has come forward with the evidence necessary to proceed under the first method of proof. Instead, he argues that triable issues of fact exist so as to preclude summary judgment under the second method. Defendant, on the other hand, argues that no reasonable juror could conclude that Plaintiff has established a prima facie case of age discrimination and that summary judgment is therefore appropriate.

**The Prima Facie Case**

As an initial matter, this Court must clarify the elements of a prima facie case of age discrimination under the MFEPA where the alleged discrimination resulted in the employee's termination. As Judge Hazel of this Court has stated, such a plaintiff must show the following to satisfy the burden of establishing a prima facie case of age discrimination: that he (1) was a member of the protected group, i.e., over the age of 40[1]; (2) suffered an adverse employment action; (3) was meeting his employer's legitimate expectations at the time of his termination; and (4) was replaced by someone significantly younger or outside the protected group. *Avant v. S. Md. Hosp., Inc.*, No. GJH-13-02989, 2015 U.S. Dist. LEXIS 11630, at *12, *25 (D. Md. Feb. 2, 2015).

---

[1] Though the MFEPA, unlike the ADEA, does not specify that only employees over the age of 40 are protected, the United States Court of Appeals for the Fourth Circuit has applied this element of a prima facie case of age discrimination to claims under the MFEPA. *See Hartman v. Univ. of Md. at Balt.*, 595 F. App'x 179, 181 (4th Cir. 2014).

Sunrise has cited cases stating that the fourth element that such a plaintiff must show is that "his employer treated him differently than similarly situated employees." ECF No. 26-1 25. The cases Sunrise cites, however, do not address the context where the adverse employment action is termination. *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 419 (D. Md. 2015), dealt with a sex discrimination claim where the adverse employment action was a demotion and the imposition of workplace restrictions. In *Price v. Giant Food, Inc.*, No. 1623, 2019 Md. App. LEXIS 602, at *10-11 (Md. Ct. Spec. App. July 23, 2019), the Maryland Court of Special Appeals addressed an age discrimination claim where the adverse employment action was the imposition of restrictions on the employee's use of the restroom and ability to speak to other employees while on duty. In *Collins v. Catholic Charities*, No. 1648, 2016 Md. App. LEXIS 961, at *5-6 (Md. Ct. Spec. App. Oct. 24, 2016), the plaintiff alleged that the adverse employment action was a disciplinary action including the removal of supervisory duties. In short, none of these cases is analogous to the case at hand.

On the record before this Court, Plaintiff has satisfied his burden as to three of the four elements of a prima facie case of age discrimination. There is no dispute that Plaintiff was 62 years old at the time of his termination. (ECF No. 26-1, 21; ECF No. 33-1 24.) There is also no dispute that Plaintiff's employment at Sunrise was terminated. (*Id.*) Similarly, Sunrise does not dispute that Plaintiff's replacement was in his 30s or 40s. (ECF No. 33-1 24.) Judges of this Court have found that plaintiffs have met their burden to establish the "substantially younger" prong of a prima facie case of age discrimination where the age gap between the plaintiff and the replacement was lower than it is here. *See, e.g.*, *Rorie v. Bd. of Educ.*, Civil Action No. TDC-20-3173, 2021 U.S. Dist. LEXIS 180741, at *16 (D. Md. Sep.

14

21, 2021) ("where there was possibly as much as a ten-year age gap between Schroeck and Rorie at the time each was subjected to discipline, the Court can plausibly infer that Schroeck was a 'substantially younger' worker . . ."); *Gladden v. Locke*, No. PJM 10-1756, 2011 U.S. Dist. LEXIS 70581, at *20 (D. Md. June 30, 2011) (finding that an 18-year age gap between the plaintiff and the replacement suffices to meet the "substantially younger" prong of the prima facie case and noting that gaps ranging from eight years and up have qualified). Thus, this Court concludes that Plaintiff has met his burden to establish the "substantially younger" prong.

The only remaining question as to Plaintiff's prima facie case is whether there is a material fact in dispute as to whether Plaintiff was meeting Defendant's legitimate expectations at the time of his termination. Defendant argues that Plaintiff cannot show he was meeting its legitimate expectations when he was found to have engaged in harassing behavior and to have neglected the cleanliness and safety of the kitchen for which he was responsible. To be sure, Plaintiff's "own perception of [his] job performance cannot create an issue of fact on this element." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996); see *Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 337 (4th Cir. 2013) (recognizing that plaintiff's "self-serving statements regarding his job performance are insufficient to show that he met [his employer's] legitimate performance expectations"); *see also Ingram v. Baltimore Gas & Elec. Co.*, No. 02-2869, 2004 U.S. Dist. LEXIS 2853, at *10 (D. Md. Feb. 25, 2004) (granting summary judgment in favor of defendant-employer where plaintiff "offers only his own self-serving assertions that his performance during this period was satisfactory"); *Mabry v. Capital One, N.A.*, No. 13-02059, 2014 U.S. Dist. LEXIS 167153,

at *3 (Dec. 3, 2014) (granting summary judgment in favor of defendant-employer where plaintiff "rel[ied] on her own self-serving allegations that she was a competent employee who performed her duties and responsibilities in a satisfactory manner"); *Avant v. S. Md. Hosp., Inc.*, No. GJH-13-02989, 2015 U.S. Dist. LEXIS 11630, at *13-14, *25 (D. Md. Feb. 2, 2015) (applying these standards to an MFEPA age discrimination claim). Additionally, it is "the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans*, 80 F.3d 960-61). The Fourth Circuit has very explicitly held that federal courts do not "sit as a super personnel department that re-examines an entity's business decisions." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997).

In this case, the record clearly reflects that Plaintiff was not meeting Sunrise's legitimate expectations. There is simply no genuine issue of material fact on this question. First, there is no dispute that during March 2018, six employees complained to Defendant's management that Plaintiff was bullying and harassing other employees, and that he was targeting women more than men. (ECF Nos. 26-1 at 26; 33-1 at 13-15.) There is no dispute that Defendant provided Plaintiff with the opportunity to respond to those complaints. (*Id.*) There is also no dispute that Defendant credited the accounts of the complainants and rejected Plaintiff's denial. (ECF No. 33-1 at 15-16.) Courts have found that it is legitimate for employers to expect employees not to engage behavior they find to be harassing. *See, e.g.*, *Bacchus v. Tubular Textile LLC*, No. 1:01CV00621, 2003 U.S. Dist. LEXIS 7308, at *14 (M.D.N.C. Mar. 19, 2003) (granting summary judgment to the employer where "there is ample evidence that Defendant firmly believed that [plaintiff] was not meeting Defendant's

legitimate expectations at the time he was terminated because he was found to be in violation of Defendant's anti-harassment policy"). Plaintiff himself acknowledged that Defendant has "the right to expect its managers not to harass employees." (Pl. Dep. at 71, ECF. No. 26-8.) He also agreed that if Defendant concluded "that a manager had harassed, bullied or threatened other employees, that would be a basis for discipline, including termination." (*Id.*) Here, the record is clear that Defendant believed the accounts of the six employees who complained about Plaintiff's behavior. Accordingly, no reasonable juror could conclude that Plaintiff was meeting Defendant's legitimate expectation not to harass other employees and summary judgment is appropriate.

Second, there is no dispute that keeping the kitchen safe and sanitary was an important part of Plaintiff's job. (Pl. Dep. 77, ECF No. 26-8.) There is also no dispute that the Crandall audit findings that the "kitchen needs a deep cleaning" were "a pretty serious set of comments." (*Id.* at 120-121.) Indeed, there is no dispute that the audit, which was conducted on Plaintiff's first day of administrative leave, resulted in a compliance score for Plaintiff's department of only 59% in the sanitation category. (ECF No. 26-1 at 18; ECF No. 27-8 *SEALED*.) Plaintiff also agreed that if Defendant believed that he was not adequately maintaining the kitchen in a safe and sanitary condition it would have the right to discipline him. (Pl. Dep. at 54, ECF No. 26-8.) As Judge Russell of this Court has noted, it is legitimate for an employer to expect an employee to maintain and clean and safe environment. *See Carr v. Md. Grocery Store Co.*, Civil Action No. GLR-17-244, 2019 U.S. Dist. LEXIS 54201, at *15 (D. Md. Mar. 29, 2019). Here, the record reflects that Defendant believed that the unsatisfactory audit results reflected poorly on Plaintiff's job performance as the kitchen

manager. Thus, on the record before this Court, no reasonable juror could conclude that Plaintiff was meeting Defendant's legitimate expectation to maintain a clean and safe kitchen area.

**Legitimate Non-Discriminatory Reasons**

The next step in the burden-shifting approach is for the Defendant to articulate a legitimate, non-discriminatory reason for the termination. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Even assuming Plaintiff had established a prima facie case, Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's termination. Specifically, Defendant has provided this Court with sufficient evidence to establish that, at the time of Plaintiff's termination, he was not meeting Defendant's legitimate performance expectations because he had been found to have engaged in bullying and harassing conduct and because his kitchen department failed a sanitation audit conducted only one day after Plaintiff began his administrative leave. *See e.g.*, *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (affirming the District Court's finding of defendant-employer's legitimate non-discriminatory reason for terminating plaintiff where plaintiff "was terminated for performance-related reasons"); *Taylor v. Rite Aid Corp.*, 993 F.Supp.2d 551, 568 (D. Md. 2014) ( "defendants have produced evidence of a legitimate, non-discriminatory reason for [plaintiff's] termination — her documented performance problems in the area of associate counseling"); *Glunt v. GES Exposition Servs., Inc.*, 123 F.Supp.2d 847, 868 (D. Md. 2000) ("plaintiff's poor job performance constitutes a legitimate, nondiscriminatory reason for demoting Plaintiff"); *Mabry*, No. 13-02059, 2014 U.S. Dist. LEXIS 167153, at *5 (defendant-employer put forth evidence of legitimate reason for termination because "at the time of [plaintiff's] termination,

18

she was not meeting [the employer's] legitimate performance expectations"). Thus, if Plaintiff had established a prima facie case, the burden would now shift back to him to show that Defendant's proffered reasons are a pretext for discrimination and that but for his age, he would not have been terminated. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, (1993).

**Pretext**

To show that Defendant's proffered reasons are but a pretext for discrimination, Plaintiff must either show that "the [employer's] explanation is unworthy of credence" or offer "other forms of circumstantial evidence sufficiently probative of . . . [the] discrimination." *Mereish*, 359 F.3d at 336 (internal quotations and citations omitted). In this case, Plaintiff argues that Defendant's failure to place Plaintiff on a performance improvement plan as it had done for at least two younger Dining Services Coordinators demonstrates that Defendant's proffered reasons for terminating Plaintiff are a pretext for intentional discrimination. (ECF No. 33-1 at 24-26.)

This Court has previously noted that it may not substitute its own judgment in place of an employer's judgment. *See Witzke v. Pepsi Bottling Ventures, LLC*, No. RDB-17-0651, 2018 U.S. Dist. LEXIS 159689, at *28 (D. Md. Sep. 19, 2018) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). In the *DeJarnette* case, the Fourth Circuit specifically noted that it is not a court's "province to decide whether" an employer's reason for terminating an employee "was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employee's] termination." *DeJarnette*, 133 F.3d at 299. *See also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217-18 (4th Cir. 2007) (affirming summary judgment

for employer because plaintiff employee had failed to establish evidence that the decision maker did not "honestly believe" the reasons for the adverse action).

Plaintiff also contends that two other employees were treated better than he was based on their age. In order to support a claim of discrimination, comparator evidence generally must show that other (substantially younger employees) are similarly situated and treated differently. *See, e.g., DeJarnette*, 133 F.3d at 298; *Lightner v. City of Wilmington*, 545 F.3d 260, 264-65 (4th Cir. 2008) (holding that the "similarity between the comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful"). As Sunrise has aptly noted, three similarly situated employees much younger than the Plaintiff were also terminated for mistreatment of other employees. (Oursler, Nicolaisen Decls., ECF Nos. 26-4, 26-5.)  The record is clear that Oursler and Nicolaisen were themselves also over the age of 40. Judge Chasanow of this Court has previously noted that when the decision makers are of the same protected class it "suggests no discriminatory motivation." *Ferebee v. Int'l House of Pancakes*, Civil Action No. DKC 13-3817, 2015 U.S. Dist. LEXIS 112687, at *15 (D. Md. Aug. 25, 2015).

Plaintiff argues that he can prove pretext by showing that Defendant did not respond to Plaintiff's performance problems in accordance with its policies. Plaintiff argues that Defendant commonly used performance improvement plans as a part of its progressive counseling policy in situations where employees were not meeting its standards, but that in Plaintiff's case, Defendant offered no such plan. (ECF No. 33-1 at 24.) It is undisputed, however, that the Defendant's policies explicitly state that "corrective action may vary from a verbal counseling to termination of employment, depending on the type and frequency of

the incidents involved." (ECF No. 33-35 at 24.) Defendant's policies further state that "failure to observe the Code of Conduct will result in disciplinary action . . . up to and including immediate termination." (*Id.*) Defendant's policies also state that progressive counseling is only available "where appropriate . . . at Sunrise's sole discretion." (*Id.*) The record is clear, then, that Defendant disciplined Plaintiff in accordance with its policies.[2]

Plaintiff also argues that he can prove pretext because Defendant placed two younger Dining Services Coordinators on performance plans with verbal counseling for engaging in similar conduct. The record is clear, however, that Plaintiff had earlier been given a verbal warning after two Sunrise employees contacted the ethics and compliance hotline to complain about demeaning comments Plaintiff made directed at them. (ECF No. 33-1 at 10-11.) Moreover, Plaintiff does not dispute that on January 27, 2017, prior to his termination in March 2018, Defendant's Regional Director of Dining performed an audit of Plaintiff's kitchen and found that it was non-compliant in the category of sanitation. (ECF No. 26-1 at 8.) Plaintiff also does not dispute that the Regional Director of Dining admonished him to focus on maintaining the cleaning logs. (*Id.*) In sum, the record reflects that Plaintiff had been warned about his harassing behavior and failure to maintain a sanitary kitchen. Thus, the comparators he offers provide no proof to the Court that his termination was motivated by age discrimination because they, like Plaintiff, were warned, counseled, and then terminated for their misconduct.

---

[2] To the extent Plaintiff takes issue with the manner in which Benik conducted the internal investigation into his behavior, the United States Court of Appeals for the Fourth Circuit has remarked that ". . . the fact that the investigation may not have been as thorough as [plaintiff] would have liked falls far short of establishing pretext." *Mercer v. PHH Corp.*, 641 F. App'x 233, 241 (4th Cir. 2016).

At bottom, neither this Court nor any federal trial jury should "sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with discrimination." *DeJarnette*, 133 F.3d at 298-99. While Plaintiff may disagree with Defendant's assessment of his conduct related to the allegations of harassment and failure to maintain the kitchen, the evidence supporting Defendant's honest belief that Plaintiff's conduct warranted termination is so one-sided that no reasonable jury could conclude that Defendant discriminated against Plaintiff. *Anderson*, 477 U.S. at 252. Plaintiff's lack of evidence is particularly stark under the elevated but-for causation requirement in age discrimination cases. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009); *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 216 (4th Cir. 2015) (per curiam).

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED. Accordingly, Judgment shall be ENTERED in favor of the Defendant.

A separate Order follows.

Date: December 1, 2021                    _____/s/_____
                                          Richard D. Bennett
                                          United States District Judge